## A. J. REITER v. WESTERN STATE BANK OF ST. PAUL.[1]

December 18, 1953.

No. 36,090.

*Meagher, Geer, Markham & Anderson* and *O. C. Adamson II,* for appellant.

*John Edmund Burke,* for respondent.

*R. J. Julkowski,* for Minnesota Bankers Assn., *amicus curiae.*

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from an order denying defendant's motion for a new trial. The case was tried in the district court without a jury.

---

[1]Reported in 62 N. W. (2d) 344.

The trial court found for plaintiff in the amount of $2,475 plus interest and denied defendant's motion for amended findings of fact and conclusions of law as well as its motion for a new trial. Upon appeal, permission was granted the Minnesota Bankers Association to file a brief *amicus curiae*. In a letter dated October 13, 1953, addressed to the court, the general counsel for the association agreed with the reasoning and argument contained in defendant's brief and supported the contentions contained therein.

Plaintiff operates an auto body business in the city of St. Paul. For more than two years prior to November 8, 1951, he had employed one O. R. Doyle, an accountant, on a part-time basis to come in monthly to perform the bookkeeping for the business. Part of Doyle's services consisted of making out checks for the bills incurred during the month and presenting them to plaintiff for his signature. On November 8, 1951, Doyle prepared a group of checks covering current bills. One of the checks was made payable to Doyle for the month's bookkeeping service. Plaintiff signed the checks, gave Doyle his check, and mailed the others to the respective payees. Plaintiff claims that when he signed the check payable to Doyle it was drawn in the amount of $25. He further claims that Doyle then fraudulently altered the check by the insertion of appropriate words and numerals so that it appeared to demand payment of $2,500 and that Doyle also added the words "30 day loan," apparently to avoid suspicion.

Doyle cashed the check at the Produce Exchange Bank in St. Paul the same day it was drawn and promptly disappeared. The Produce Exchange Bank presented the check through the First National Bank of St. Paul to defendant bank, which paid it in the amount of $2,500 and debited plaintiff's account for that amount. When plaintiff received his monthly bank statement about the sixth of the following month, he discovered the alteration and made timely demand upon defendant for the $2,475 paid in excess of the amount for which he claims the check was drawn. Upon refusal of the demand, plaintiff sued for conversion of the funds paid in excess of his order.

It is defendant's position that plaintiff, as a depositor in defendant bank, owed the bank a duty to use care in drafting or preparing his

486

checks and that he was under an obligation not to sign a check negligently drafted which would mislead the bank. It contends that plaintiff's agent drafted this check payable to himself and that the check contained unusual spaces of sufficient size to allow the amount of the check to be increased; that plaintiff signed the check in this condition and thus breached his duty and obligation to the bank; and that therefore plaintiff's agent utilized the spaces to raise the check in an undetectable manner. Defendant therefore argues that it paid the check in good faith according to its apparent amount; that the bank was entitled to debit plaintiff's account for the full raised amount of the check; and that plaintiff is either estopped or barred by his negligence from any recovery against the bank. The trial court rejected this contention, finding as a fact:

"That plaintiff was not guilty of negligence which was a proximate cause of any deception of defendant bank."

Plaintiff testified that, when he signed the check, over at the right in the space for the figures there was a 25 with a decimal point after the five and two zeros with a line under the two zeros ($25.$^{00}$) and that there was only about one-eighth of an inch between the end or cap of the figure 5 and the first zero, representing no cents. He further claimed that the decimal point which had followed the figure 25 when he signed the check had been covered by one of the two zeros which were later inserted to make the figure 2500. On the next line, provided for the writing of the amount of the check in words, there now appears "Twenty five hundred & . . . . . . . . . . . . . . no/100 Dollars." (Plaintiff's exhibit A.) Plaintiff claims that when he signed the check only the words "Twenty five" were written in that space and that about a quarter of an inch from the written word "five" there was a light or faint line in ink, then a slight skip in the line, and that the lighter line in ink extended out toward the "no/100"; that is, the skip appeared to be between the word "hundred" and the "&" symbol as the check appeared at the time of the trial. Further identifying the place where he claimed the light line started, he said it commenced at a point where the "u" in the word "hundred" now appears. He expressed a belief that the

line had been made almost imperceptible by an erasure. He further called attention in his testimony to certain smudges on the check and said that the words "30 day loan" definitely were not on the check when he signed it.

■ M. S. A. 335.48 provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent endorsers.

"When an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

The rule is well settled that a bank pays a forged or altered check at its peril and can debit the drawer's account only for the amount of the check as originally drawn. § 335.48; Brunswick Corp. v. N. W. Nat. Bank & Trust Co. 214 Minn. 370, 8 N. W. (2d) 333; Britton, Bills and Notes, § 132, and cases cited. Under the law, defendant bank owed plaintiff as a depositor the absolute duty to pay out his money only according to plaintiff's order. Rodgers v. Bankers Nat. Bank, 179 Minn. 197, 229 N. W. 90; Germania Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635; Brunswick Corp. v. N. W. Nat. Bank & Trust Co. *supra.* However, there is an exception to this rule which defendant seeks to invoke to the effect that one who draws a check in such form that it may be inconspicuously altered by the addition of words and numerals in spaces left blank by the drawer cannot recover from the drawee for the increased payment resulting from the alteration of the check. Young v. Grote, 4 Bing. 253, 130 Reprint 764; Goldsmith v. Atlantic Nat. Bank (Fla.) 55 So. (2d) 804; Timbel v. Garfield Nat. Bank, 121 App. Div. 870, 106 N. Y. S. 497; Foutch v. Alexandria Bank & Trust Co. 177 Tenn. 348, 149 S. W. (2d) 76.[2]

■ Plaintiff argues that he, as drawer of the check, need not bear the loss resulting from a raised check unless his negligence was the

---

[2] A lengthy treatise in connection with this exception is contained in Foutch v. Alexandria Bank & Trust Co. 177 Tenn. 348, 149 S. W. (2d) 76.

488

sole proximate cause of the loss without any intervening crime or negligent act by a third party, such as the fraudulent alteration in the instant case. We find it unnecessary to resolve this conflict. Even accepting the interpretation of the law most favorable to defendant, we must affirm unless we find that the drawer negligently facilitated an alteration by leaving spaces on the check. The trial court found that plaintiff had not acted negligently so as to proximately cause the deception of defendant. There was evidence from which the court could have concluded that, when plaintiff signed the check, it contained no blank spaces of the type which could constitute proof of his negligence.

Whether plaintiff was so negligent as to preclude his recovery for the payment of the raised check was a fact question (4 Dunnell, Dig. & Supp. § 7048) and the trial court's determination of it can be interfered with only if the evidence taken as a whole provides no substantial support for or is manifestly or palpably contrary to the trial court's findings. Bjerketvedt v. Jacobson, 232 Minn. 152, 44 N. W. (2d) 775; 1 Dunnell, Dig. (3 ed.) § 411.

"Our rule is that the trial court's findings are not to be set aside unless clearly or manifestly against the weight of the evidence or without any reasonable support in the evidence. The rule applies although the construction of written or documentary evidence is involved, and even if this court might be inclined to draw different inferences." Sommers v. City of St. Paul, 183 Minn. 545, 551, 237 N. W. 427, 430.

Here, in addition to examining the cancelled check, the trial court heard important oral testimony pertaining to the condition of the check when originally drawn. Its evaluation of this evidence must receive due consideration here. We conclude that the trial court was justified in finding that defendant had not proved plaintiff negligent in his manner of drawing the check involved here.

Affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.