341 So.2d 795 (1977)
A.H. BLAKE, As Tax Assessor of Dade County, Florida, et al., Appellants,
v.
R.M.S. HOLDING CORP., a Florida Corporation, Appellee.
No. 75-1753.
District Court of Appeal of Florida, Third District.
January 18, 1977.
*797 Stuart L. Simon, County Atty., and Robert L. Krawcheck, Asst. County Atty., for appellants.
Richard M. Sepler and Irma V. Hernandez, Hialeah, for appellee.
Before HENDRY, C.J., and PEARSON, J., and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL (Ret.), Associate Judge.
This appeal is by the tax assessor and tax collector of Dade County and the other named defendants, from an adverse summary judgment which set aside the 1974 assessment of plaintiff's real property made on a nonagricultural basis, and directed that the property be assessed and taxed for 1974 as agricultural. We find error, and reverse.
On March 13, 1975, the plaintiff landowner R.M.S. Holding Corp. filed suit in the circuit court of Dade County, under Section 194.171 Florida Statutes (1973), contesting the amount of the 1974 assessment on its real property as nonagricultural ($152,600.00), contending the property should have been classified as agricultural and assessed accordingly, for a lesser amount.
As ground for its challenge of the amount of the assessment, the plaintiff alleged that through its attorney, on January 31, 1974, it had mailed to the assessor a letter containing an application to have the property classified as agricultural; that the assessor had failed to comply with that request, and had not informed plaintiff of a denial thereof, for which reason the plaintiff had not petitioned the Board of Tax Adjustment for review of the assessment. It was alleged the plaintiff had complied with every condition precedent required by law to have the property classified as agricultural for 1974. The complaint "tendered" to "the defendant" the sum of $88.70, therein stated to represent the amount of tax which plaintiff admitted in good faith it owed on the property for 1974. There was no allegation that any portion of the tax had been paid to the tax collector, and no receipt of the tax collector for any such payment was filed with the complaint.
The defendants answered. They denied the allegation of compliance with the legal requirements to entitle plaintiff to receive the desired classification of the property, and averred that no such application from the plaintiff was received by the tax assessor's office. As affirmative defenses the defendants pleaded failure of the plaintiff to file with the assessor a timely application for agricultural assessment; failure of the plaintiff to exhaust its administrative remedy; failure of the plaintiff to pay to the tax collector the portion of tax admitted to be owed and failure to file with the complaint a receipt of the tax collector for such a payment; and that the action was not filed within the 60 day time limit provided therefor by law. At the hearing on a motion for summary judgment filed by the defendants, the pleadings, and the evidence consisting of an affidavit and a discovery deposition of the plaintiff's attorney and an affidavit of an employee of the tax assessor who headed the department of the assessor's office concerned with such matters, showed the following facts.
In August of 1973 certain individuals, whose identity was not disclosed, entered into a contract to purchase the land in question from the then owner, one Raymond Leyon, a resident of the state of Michigan; that because of the time required for the owner to cure a defect in title, the closing of the sale, which was to have been sometime in 1973, was delayed and it appeared the sale was closed in January of 1974, on or after January 15. The purchasers formed the plaintiff corporation to which title was conveyed.
While previously owned by Leyon, the property had been assessed and taxed as agricultural for a number of years. In 1972 and 1973 Leyon had timely filed short form applications for renewals of agricultural assessment, which had been acted upon by the assessor for taxation of the property on that basis in those years.
On January 18, 1974, the assessor sent to Leyon, who appeared on his records as the *798 owner, a short form renewal card for his use in applying for a renewal of agricultural assessment, as permitted by statute to one whose land was assessed as agricultural for the preceding year. Having sold the property, Leyon forwarded the application form to the attorney for the new owner. On January 31, 1974, the plaintiff's attorney wrote a letter to the assessor in which he enclosed the short renewal form, made out as an application of the new owner for agricultural assessment of the property for the tax year 1974. Due to an error by a secretary, that letter was incorrectly addressed to the assessor at the Dade County courthouse, whereas the office of the tax assessor was, and for a number of years had been, Room 310 Justice Building, 1351 N.W. 12th Street, in Miami. That letter was not delivered to the assessor's office. Accordingly, the property was assessed and taxed for 1974 as nonagricultural.
On December 11, 1974, after receipt by the plaintiff of the tax bill for 1974 based on such assessment, the plaintiff's attorney wrote a letter to the assessor in which he enclosed the 1974 tax bill and a copy of the January 31, 1974 letter (which the assessor had not received), and stated: "My records reveal that we filed for this renewal on January 31, 1974 as per copy of the enclosed letter. We received no notification from the tax assessor's office and assumed as in prior years agricultural assessment would be utilized. The enclosed tax bill indicated a contrary treatment on the assessment and taxation of the subject property which needs to be corrected. Should you require any additional information, please feel free to call upon me." That letter was similarly incorrectly addressed, and was not received by the tax assessor. On December 27, 1974, another letter was sent to the assessor by the plaintiff's attorney, enclosing a copy of the letter of December 11. That letter was received by the tax assessor, who replied thereto on January 3, 1975, stating the earlier letters referred to had not been received, and that the records of the assessor's office showed no return was filed for agricultural assessment of the property for 1974. The assessor's letter also stated that since no such return had been filed for 1974, a renewal form for 1975 was not being sent to the plaintiff, but that a return form to be filed by the plaintiff for 1975 was enclosed.
The trial court, holding there was no triable issue of fact, granted summary judgment in favor of the defendants. Plaintiff moved for rehearing. The ground stated therein was that the court had erred in granting summary judgment for the defendants "in that there are questions of facts in this case". The court granted rehearing, and entered the summary judgment from which the defendants have appealed. Therein, without stating grounds or reasons, other than that the ruling was made upon reconsideration of the pleadings, deposition and affidavits, the court vacated the judgment initially rendered in favor of the defendants and granted summary judgment in favor of the plaintiff, in which the court ordered the defendants to classify the property as agricultural for the calendar year 1974, and to adjust the tax thereon accordingly.
In our opinion, the judgment originally entered in favor of the defendants was correct, and the judgment entered in favor of the plaintiff on rehearing was erroneous because on the pleadings and the evidence before the court on the defendants' motion for summary judgment the several affirmative defenses pleaded by the defendant were established.[1]
*799 First. In order for the plaintiff, as the new owner, to obtain a classification and assessment of its property as agricultural for the tax year 1974, it was necessary for the plaintiff to file a return, or application therefor in the office of the tax assessor on or before April 1, 1974, and supplement the same with such information as the assessor properly should require. Section 193.461(3)(a) Florida Statutes (1973). Additionally, subsection (6)(a) of that section provided that the assessment of land should be based solely on its agricultural use "in years in which proper application for agricultural assessment has been made and granted pursuant to this section". Further, in subsection (6)(b) the statute stated: "In years in which proper application for agricultural assessment has not been made the land shall be assessed under the provisions of § 193.011, Florida Statutes" [nonagricultural].
No return or application for agricultural assessment was made by the plaintiff for 1974. The statute required that it be filed with the assessor, by April 1. To be so filed, a document or paper must be delivered to and received in the office of the assessor. Black's Law Dictionary, Fourth Edition, defining file, states: "To deliver an instrument or other paper to the proper officer for the purpose of being kept on file by him in the proper place", and further; "A paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file". See Bituminous Casualty Corporation v. Clements, 148 Fla. 175, 3 So.2d 865 (1941).
On that ground, aside from other considerations, the defendants were entitled to judgment. We hold to be without merit the appellee's argument that the mailing of an application to the assessor, which was incorrectly addressed and not received by the assessor's office, fulfilled the statutory requirement for filing such a return or application with the assessor. The record shows that the letter which was not received by the assessor enclosed a short form renewal application for agricultural assessment for 1974. Therefore, even if it had been received by the assessor, it would not have been a "proper application" by the new owner, although the prior owner, had he not sold the property, could have used that short form renewal application.
Second. The plaintiff failed to comply with legally imposed conditions precedent to filing suit to challenge the amount of the assessment. Section 194.171(3), Florida Statutes (1973) provided that before a taxpayer may bring an action to contest a tax assessment "he shall pay to the collector the amount of the tax which he admits in good faith to be owing". Here that was not done. That subsection further provides: "The collector shall issue a receipt for the payment, and the taxpayer shall file the receipt with his complaint." The plaintiff did not comply with that requirement. Because of those omissions by the plaintiff, the defendants were entitled to summary judgment. Buchanan v. City of Tampa, 134 *800 Fla. 618, 184 So. 104 (1938); Dade County Land Development Corp. v. Dade County, 157 So.2d 142 (Fla.3d DCA 1963).
Third. Admittedly the plaintiff did not exhaust its administrative remedies, by timely seeking review of the amount of the assessment, as provided for by statute. See sections 193.461(2), 194.011(3), 194.032, and 194.042 Florida Statutes (1973). As a result of its failure in that regard the plaintiff was entitled to no relief on its suit challenging the assessment. Marx v. Welch, 178 So.2d 737 (Fla.3d DCA 1965); Monroe County v. Gustinger, 285 So.2d 431 (Fla.3d DCA 1973).
We reject as unsound the contention of the appellee that it should be excused for its failure to exercise its administrative remedies because the assessor did not notify the plaintiff that its application for agricultural assessment had been "denied". When the assessor did not receive such an application, he cannot be said to have denied it, and there was no occasion for the assessor to communicate with the plaintiff prior to the assessment which was made. Moreover, when a properly filed application for agricultural assessment is not granted, the statute does not require the assessor to so inform the applicant. The statute provides that the assessor "shall have available at his office a list by ownership of all applications received [for agricultural assessment], showing the acreage, full valuation under § 193.011, the valuation of the land under the provisions of this section, and whether or not the classification requested was granted". Section 193.461(2) Florida Statutes (1973). Therefore, by virtue of that provision of the statute, the plaintiff was charged with notice that the public records in the assessor's office would reveal the status of the land in question in the respects involved. The plaintiff's lack of knowledge in the matter was due to its failure to timely check the records in the assessor's office. The assessment and taxation of the property as nonagricultural for 1974, in the existing circumstances, were made properly under the law.
The appellee argues the judgment for plaintiff is supportable upon the ground that on the facts of the case the defendant officials were estopped to assess and tax the property for 1974 other than as agricultural. With no timely and proper application for agricultural assessment of the property for 1974 having been received in the office of the assessor, that official took no action contrary to the law or which could have misled the plaintiff in any regard with respect to the assessment placed on the property for 1974. The same applies to the tax collector, acting on the certified assessment roll. There was no basis to apply an estoppel against the defendants.
Fourth. Section 194.171(2) Florida Statutes (1973) states that no action shall be brought to contest a tax assessment after 60 days from the date the assessment roll is certified for collection under section 193.122(2), which provides for certification of the assessment roll by the tax assessor after revisions thereof to implement any changes in the roll resulting from action of the Board of Tax Adjustment. Under section 197.055, taxes become due and payable on the first day of November of each and every year "or as soon thereafter as the assessment roll may come into the hands of the tax collector".
Because this suit was not filed within the time prescribed by law the trial court did not have jurisdiction of the subject matter. Although the defendants did not present evidence (by certificate or affidavit of the assessor) of the date on which the assessment roll was certified for collection, which customarily takes place prior to November 1, it sufficiently appeared on the record in the trial court that the 1974 assessment roll was certified for collection, at the latest, sometime prior to December 11, 1974. That was disclosed in the record by the showing that the plaintiff had received its bill for the 1974 taxes, from the tax collector, on or prior to December 11, on which date the plaintiff's attorney wrote a letter to the tax assessor enclosing the tax bill. As the plaintiff's action challenging the assessment was commenced on March 13, 1975, it was *801 clearly disclosed that the suit was filed more than 60 days after the certification of the assessment roll for collection. For that additional reason the defendants were entitled to judgment, and it was error to grant judgment for the plaintiff. Harvey Seeds Post No. 28 American Legion v. Dade County, 230 So.2d 696 (Fla.3d DCA 1970); Askew v. MGIC Development Corporation of Florida, 262 So.2d 227 (Fla.4th DCA 1972). In this instance the property was subject to the taxation and the tax imposed thereon for 1974 was authorized by law. The exception by which the 60 day filing period may be disregarded for a suit challenging an assessment on grounds that a property is not subject to taxation, or that the tax is void, is not applicable. See Ranger Realty v. Hefty, 112 Fla. 654, 152 So. 439, 442-443 (1933); West Virginia Hotel Corporation v. W.C. Foster Co., 101 Fla. 1147, 132 So. 842 (1931).
For the reasons stated, the judgment entered in favor of the plaintiff which is appealed from is hereby reversed, and the earlier summary judgment entered in favor of the defendants is reinstated.
It is so ordered.
NOTES
[1] § 193.461 Fla. Stat. (1973), by subsection (1), directed the assessor, on an annual basis, to classify for assessment purposes all property within the county as either agricultural or nonagricultural. Subsection (2) made provision for a landowner who was denied agricultural assessment to apply to the Board of Tax Adjustment for review thereof. Subsection (3) provided that "No lands shall be classified as agricultural lands unless the return is filed on or before April 1 of each year", and that the assessor, before classifying such lands as agricultural "may require the taxpayer or his representative to furnish the assessor such information as may reasonably be required to establish that the said lands were actually used for a bona fide agricultural purpose", and provided: "Failure to make timely application by April 1, shall constitute a waiver for one year of the privilege herein granted for agricultural assessment". It was further provided therein that an owner whose land was classified as agricultural in the previous year could apply for a renewal thereof for the ensuing year on a "short form" provided for that purpose, when the ownership or use has not changed.

Further in subsection (3), that section of the statute set forth a considerable number of factors and elements essential to be considered by the assessor in determining whether land was to be classified as agricultural. Many of those are matters with regard to which the assessor would be entitled to require information from a landowner initially applying for an agricultural classification, or upon application by a purchaser from an owner whose lands had been so classified previously. Additionally, as to an application by a new purchaser, the statute provided that if the purchase price for which the land was acquired by the purchaser was three or more times the amount of the agricultural assessment which was previously placed on the land, that fact would create a presumption that the land is not used primarily for bona fide agricultural purposes by the new owner, requiring a showing by the new owner of special circumstances to the contrary to rebut the presumption. The record in this case does not disclose the price for which the land was purchased by plaintiff, and does not show the amount of the prior agricultural assessment.